## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF ASSOCIAÇÃO BRASILEIRA DE INVESTIMENTO, CRÉDITO E CONSUMO FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 25-MC _____ |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

# TABLE OF CONTENTS

# CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

I.   FACTUAL BACKGROUND ..............................................................................4

    A.   Relevant Entities ....................................................................................4

        1.   ABRAICC (*Associação Brasileira de Investimento, Crédito e Consumo*) ..................................................................................4

        2.   Goldman Sachs Inc. (The Goldman Sachs Group, Inc.)...........................5

        3.   Goldman Sachs LLC (Goldman Sachs & Co., LLC).................................5

        4.   ANBIMA (*Associação Brasileira das Entidades dos Mercados Financeiros e de Capitais*)..........................................................5

        5.   Centaurus (Centaurus Capital LP) ............................................................5

        6.   Oncoclínicas (*Oncoclínicas do Brasil Serviços Médicos S.A.*)................6

    B.   The Initial Public Offering of Oncoclínicas..........................................6

    C.   The Tender-Offer Requirement in Oncoclínicas's Bylaws and Announcement of Centaurus's Investment .............................................7

    D.   Recent Statements about Centaurus's Investment In Oncoclínicas.........................8

    E.   The Contemplated Brazilian Proceeding ...............................................10

    F.   The Respondents Possess Highly Material Information for Use in the Contemplated Brazilian Proceeding .......................................................13

    G.   ABRAICC's Requests for Preservation and Voluntary Production of the Requested Materials............................................................................17

II.   ARGUMENT .....................................................................................................17

    A.   Legal Framework ...................................................................................17

    B.   ABRAICC Satisfies the Statutory Requirements of 28 U.S.C. § 1782. ...............20

        1.   Respondents Are "Found" In This District................................................20

        2.   The Discovery Sought Is "For Use" In A Foreign Proceeding.................20

        3.   ABRAICC Is an Interested Person in the Contemplated Brazilian Proceeding.............................................................................22

    C.   The Discretionary Factors of Section 1782 all Weigh Heavily in Favor of Permitting the Discovery ABRAICC Seeks. .......................................23

        1.   The First *Intel* Factor Favors Granting Discovery Because the Respondents Will Not Be Parties to the Contemplated Brazilian Proceeding.............................................................................23

        2.   The Second *Intel* Factor Favors Granting Discovery Because the

Brazilian Courts Will Be Receptive to the Requested Discovery..............24

3.    The Third *Intel* Factor Favors Granting Discovery Because the Application Is Made in Good Faith and Does Not Circumvent Any Proof-Gathering Restrictions. ....................................................................25

4.    The Fourth *Intel* Factor Favors Granting Discovery Because the Requests Are Narrowly-Tailored and Proportional to the Needs of the Contemplated Brazilian Proceeding......................................................26

III.    CONCLUSION................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).........................................................19

*In re Atvos Agroindustrial Investimentos S.A.*,
481 F. Supp. 3d 166 ...........................................................................................21, 25

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998).....................................................................................18

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)...........................................................................18, 19, 25

*Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio*,
680 F. App'x 37 (2d Cir. 2017) ................................................................................26

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)......................................................................................20

*Ecoprivate Bus. Ltd. v. Clearing House Payments Co. L.L.C.*,
2023 WL 4848516 (S.D.N.Y. July 28, 2023) ..........................................................22

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002).....................................................................................19

*Euromepa S.A. v. R. Esmerian*,
Inc., 51 F.3d 1095 (2d Cir. 1995) ......................................................................19, 24

*In re Gianoli Aldunate*,
3 F.3d 54 (2d Cir. 1993)......................................................................................18, 24

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012) ..............................................................................18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)...........................................4, 17, 19, 20, 21, 22, 23, 25, 26

*Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015).............................................................................20, 22

*In re Lane*,
2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022).........................................................21

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015)..................................................................4, 26

*In re Metallgesellschaft AG*,
  121 F.3d 77 (1997)...................................................................................25

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
  2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................................27

*In re Orthogen Int'l GmbH*,
  2025 WL 1268843 (S.D.N.Y. Apr. 30, 2025)...........................................21

*In re Refinería de Cartagena S.A.S.*,
  2024 WL 95056 (S.D.N.Y. Jan. 8, 2024) .................................................20

*In re Safra*,
  2022 WL 3584541 (S.D.N.Y. Aug. 2, 2022)............................................24

*Symeou v. Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) .................................................................18

*In re Tethyan Copper Co. Pty. Ltd.*,
  2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022)...........................................18

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) .............................................................21

### Statutes

28 U.S.C. § 1782........................................1, 3, 4, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27

Brazil's Public Civil Action Act .................................................................13

Brazilian Civil Procedure Code ..................................................................26

*Associação Brasileira de Investimento, Crédito e Consumo* ("ABRAICC" or "Petitioner") respectfully submits this Memorandum of Law in support of its Application and Petition Pursuant to 28 U.S.C. § 1782 (the "Section 1782 Application"), for an order authorizing it to obtain discovery from The Goldman Sachs Group, Inc. ("Goldman Sachs Inc.") and Goldman Sachs & Co. LLC ("Goldman Sachs LLC") (collectively, "Respondents") in the form of the attached subpoenas (the "Subpoenas").[1]

## PRELIMINARY STATEMENT

This Application arises from false and misleading information contained in the Prospectus and other documents related to the initial public offering ("IPO") of *Oncoclínicas do Brasil Serviços Médicos S.A.* ("Oncoclínicas" or, the Company), a Brazilian cancer treatment company, which operates many treatment centers in Brazil.

Specifically, the Prospectus and other IPO documents list The Goldman Sachs Group, Inc. ("Goldman Sachs Inc.") as the ultimate shareholder of the investment funds that controlled Oncoclínicas at the time of its IPO in Brazil, owning nearly 94% of the Company. This representation was material because Oncoclínicas also attached its bylaws to the prospectus, which include a provision requiring any post-IPO investor that acquired over 15% of Oncoclínicas shares to make a tender offer at a contractually-determined price that could be materially above the trading price. Accordingly, many investors in Oncoclínicas's IPO made their investment decisions based, in part, on the likelihood that Goldman Sachs Inc. would not remain a controlling

---

[1] The Subpoenas are attached as Exs. 2-5 to the Declaration of John ("Fritz") Scanlon, dated October 31, 2025 ("Scanlon Decl.").

shareholder of a network of Brazilian cancer treatment centers, therefore increasing the likelihood that the tender-offer provision would be triggered in the near future.

Recently, however, Centaurus Capital LP ("Centaurus")—a family investment office founded by former Enron executive John Arnold—acquired over 16% of the company without making the tender offer required by Oncoclínicas's bylaws. Had Centaurus made the required tender offer at the time it acquired over 16% of the company, it would have been forced to offer shareholders ***approximately eight times*** above what Oncoclínicas is trading at today. Oncoclínicas thereafter submitted information to Brazilian regulators indicating that, contrary to the disclosures in its IPO materials, Centaurus was part of the group of controlling shareholders of Oncoclínicas prior to the IPO, with more than 31% of the company's equity and the right to nominate a member of its board of directors at that time. If Oncoclínicas's recent disclosures to its regulators are true, then that means the representations Oncoclínicas made to investors in connection with the IPO were false.

While the IPO occurred in Brazil, and Oncoclínicas trades only on the Brazilian B3 stock exchange, Oncoclínicas's shares were marketed abroad, including in the United States, by Goldman Sachs & Co. LLC ("Goldman Sachs LLC"), which is listed in the Prospectus as an international placement agent.

ABRAICC, which is a non-profit association dedicated to protecting the rights and interests of investors in capital markets, intends to file a class action lawsuit in Brazil against Oncoclínicas and the *Associação Brasileira das Entidades dos Mercados Financeiros e de Capitais* ("ANBIMA"), a Brazilian self-regulatory organization that oversees market participants, particularly in the investment industry (the "Contemplated Brazilian Proceeding"). The goal of

the Contemplated Brazilian Proceeding is to hold Oncoclínicas responsible for the misrepresentations in its IPO documents, and to hold ANBIMA responsible for failing to protect and safeguard market integrity, including the rights and interests of Oncoclínicas's investors.

ABRAICC therefore brings this Section 1782 Application to obtain targeted evidence from the Respondents for use in the Contemplated Brazilian Proceeding. That discovery includes, among other things, information about Oncoclínicas's IPO, the true ownership structure of Oncoclínicas, and the Respondents' efforts to promote and sell Oncoclínicas's shares to investors located in the United States and elsewhere. It also seeks evidence that is uniquely in the possession of Respondents, including, for example, Goldman Sachs Inc.'s records regarding its beneficial ownership of Oncoclínicas shares prior to the IPO, the marketing materials Goldman Sachs LLC used to market the IPO in the United States and abroad, and the identities of the non-Brazilian investors to whom Goldman Sachs LLC sold shares.

This Application meets all the statutory requirements of Section 1782. The Respondents "reside or are found" in the Southern District of New York because they have their principal places of business here. ABRAICC is an "interested party" in the Contemplated Brazilian Proceeding because it is the class plaintiff in the contemplated class action. And the discovery sought by ABRAICC is highly material and relevant to the issues at stake in the Contemplated Brazilian Proceeding. Indeed, the evidence will help show that Oncoclínicas made misrepresentations or material omissions in their IPO documents about the true ownership structure of Oncoclínicas, that ANBIMA, contrary to its Code of Public Offerings, failed to perform its duties to safeguard market integrity and investor protection when it failed to identify these misrepresentations and omissions, and that investors in Brazil were harmed as a result.

Moreover, each of the discretionary factors laid down in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), favors authorizing the discovery sought by ABRAICC: (i) the Respondents will not be parties to the Contemplated Brazilian Proceeding, and ABRAICC is otherwise unable to obtain the discovery in Brazil; (ii) the Brazilian courts will be receptive to the discovery that ABRAICC seeks; (iii) the Application does not circumvent foreign proof-gathering restrictions and is made in good faith; and (iv) the discovery sought is neither unduly intrusive nor burdensome. In addition, granting this Application would further the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015). Accordingly, ABRAICC respectfully requests that the Court grant its Application and permit ABRAICC to serve the Subpoenas on the Respondents.

## I.     FACTUAL BACKGROUND

### A.     Relevant Entities

#### 1.     ABRAICC (*Associação Brasileira de Investimento, Crédito e Consumo*)

ABRAICC is a Brazilian non-profit association dedicated to protecting the rights and interests of investors in capital markets. (Declaration of Alfredo Sergio Lazzareschi Neto, dated October 31, 2025 ("Lazzareschi Decl.") ¶ 12 & Ex. B.) Under Brazilian law, non-profit associations meeting certain conditions, rather than individual investors, have standing to file class action lawsuits. ABRAICC has standing in Brazil to file a class action lawsuit on behalf of investors in Brazilian capital markets under Law 7,347/1985. (*Id.* ¶ 13.)

### 2. Goldman Sachs Inc. (The Goldman Sachs Group, Inc.)

Goldman Sachs Inc. is a publicly traded company whose principal place of business is located in New York, New York. (*Id.* ¶ 14 & Ex. C.) Goldman Sachs Inc., together with its consolidated subsidiaries, delivers a broad range of financial services to a large and diversified client base that includes corporations, financial institutions, governments, and individuals. (*Id.*)

### 3. Goldman Sachs LLC (Goldman Sachs & Co., LLC)

Goldman Sachs LLC is a subsidiary of Goldman Sachs Inc., and its principal place of business is located in New York, New York. (*Id.* ¶ 15 & Ex. D.) Goldman Sachs LLC is registered with the Securities and Exchange Commission ("SEC") as both a broker-dealer and an investment adviser and is a member of the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). (*Id.* & Ex. E.)

### 4. ANBIMA (*Associação Brasileira das Entidades dos Mercados Financeiros e de Capitais*)

ANBIMA is a Brazilian self-regulatory organization that, among other things, establishes codes of best practices and oversees market participants, particularly in the investment industry, to ensure fair and ethical practices. (*Id.* ¶ 16.) ANBIMA's responsibilities include promoting transparency, establishing industry standards, and improving investor confidence in Brazil's financial system. (*Id.* ¶¶ 16-17.)

### 5. Centaurus (Centaurus Capital LP)

Centaurus is the family investment office for billionaire John Arnold, a former executive of Enron. (*Id.* ¶ 19 & Ex. F.)

### 6. Oncoclínicas (*Oncoclínicas do Brasil Serviços Médicos S.A.*)

Oncoclínicas is headquartered in Brazil, and it is one of the largest oncology, hematology, and radiotherapy centers in Latin America, with over 140 units operating in 40 cities in Brazil and a medical staff of over 2,900 oncology specialists. (*Id.* ¶ 20.) Oncoclínicas locations are focused on research, technology, and innovation, as well as providing outpatient clinics for cancer treatment. (*Id.*)

### B. The Initial Public Offering of Oncoclínicas

In August 2021, Oncoclínicas launched an initial public offering ("IPO"), selling shares on the Brazilian B3 stock exchange under the ticker ONCO3. (*Id.* ¶ 22.) The Prospectus listed Goldman Sachs Inc. as the ultimate shareholder of the investment funds that controlled Oncoclínicas at the time of the IPO. (*Id.* ¶ 23 & Ex. G at 19.) The Prospectus provided a diagram of Oncoclínicas's shareholding structure, which showed Goldman Sachs Inc. as the 100% owners of *Josephina Fundo de Investimento em Participações* ("Josephina I FIP") and *Josephina II Fundo de Investimento em Participações* ("Josephina II FIP"), funds which in turn owned 93.57% of Oncoclínicas, (*id.*):



*Id.* Nowhere in the Prospectus or other IPO documents is there any mention of Centaurus having an indirect or direct ownership interest in Oncoclínicas. Rather, the Prospectus represents that Goldman Sachs Inc. was the sole limited partner of each Josephina fund. (*Id.* ¶ 24 & Ex. G.)

The Prospectus further listed Goldman Sachs LLC as an international placement agent responsible for offering shares outside of Brazil, including in the United States. (*Id.* ¶ 25 & Ex. G at 1.)

As required by Brazilian law, ANBIMA reviewed and cleared the Prospectus and ancillary materials of the Oncoclínicas IPO through its market participating institutions. (*Id.* ¶ 26.) In doing so, ANBIMA was exercising its role of ensuring that the Prospectus and other offering documents comply with the ANBIMA Code of Public Offerings, which establishes standards of transparency, conduct, and information quality. (*Id.*) ANBIMA's certification reinforces the credibility of the offering in the market and among institutional investors. (*Id.*)

According to contemporaneous reporting, the IPO raised approximately R$ 3.6 billion (approximately US$ 690 million). (*Id.* ¶ 27 & Ex. H.)

### C. The Tender-Offer Requirement in Oncoclínicas's Bylaws and Announcement of Centaurus's Investment

Article 39 of Oncoclínicas's bylaws requires any individual or corporation that acquires 15% or more of the total shares issued by the company to make a public tender offer for all shares issued by the company. (*Id.* ¶ 28 & Ex. I.) Article 39 further specifies that any such tender offer must be priced at a contractually-determined amount that could be materially above the trading price. (*Id.*)

Unlike many such tender-offer provisions in the bylaws of Brazilian publicly traded companies, Oncoclínicas's bylaws include an exception: if the 15% threshold is crossed through a

capital increase, the trigger is not activated.  If the 15% threshold is crossed by a "new" investor, however, then the mandatory tender offer is triggered.  (*Id.* ¶ 29.)

On November 11, 2024, Oncoclínicas informed the market that an investor had acquired 16.05% of Oncoclínicas's issued shares.  (*Id.* ¶ 29.)  That new investor is named *Josephina III Fundo de Investimento em Participações* ("Josephina III FIP"), an investment fund owned by Centaurus.  (*Id.* ¶ 30 & Ex. J.)

### D.  Recent Statements about Centaurus's Investment In Oncoclínicas

In May 2025, Josephina III FIP made formal statements to the *Comissão de Valores Mobiliários* ("CVM")—Brazil's equivalent of the SEC—claiming that, at the time of Oncoclínicas's IPO, Centaurus was an indirect investor in Oncoclínicas through an entity named "Brazilian Holdings Control Partnership, LP" ("BHCP").  (*Id.* ¶ 31 & Ex. K.)  According to Josephina III FIP, BHCP held 100% of the equity of a limited liability company incorporated in Delaware named "New Broad Street Brazil Holdings II, LLC," which in turn held 100% of the quotas of the two Goldman Sachs-owned funds listed as the controlling shareholders of Oncoclínicas in the Prospectus for the Oncoclínicas IPO: Josephina I FIP and Josephina II FIP.  (*Id.* ¶ 32)

Josephina III FIP further stated to the CVM that Centaurus had the right to demand the liquidation of BHCP, at which point Centaurus would then have the right to receive, by way of payment in kind and in proportion to its interest in BHCP, the assets comprising the portfolio of that entity—specifically, the ownership stake in Oncoclínicas (the "Liquidation Right").  (*Id.* ¶ 33.) According to Josephina III FIP, the Liquidation Right means that Centaurus held "rights over the shares" of Oncoclínicas at the time of the IPO, and therefore the mandatory tender offer in Article

39 of Oncoclínicas's bylaws was not triggered when Centaurus acquired 16.05% of Oncoclínicas's issued shares, because Centaurus is not a "new" investor. (*Id.*)

Josephina III FIP further stated to the CVM that, as a result of the Liquidation Right, Centaurus was part of the group of controlling shareholders of Oncoclínicas at the time of Oncoclínicas's IPO, with 31.81% of the equity ownership and the right to nominate a member of the Board of Directors of Oncoclínicas. (*Id.* ¶ 34.) According to Josephina III FIP, this alleged ownership at the time of the Oncoclínicas IPO is further reason why the mandatory tender offer in Article 39 of Oncoclínicas's bylaws was not triggered. (*Id.*)

These recent statements to the CVM by Josephina III FIP stand in stark contrast to the statements in the Prospectus and other documents associated with Oncoclínicas's IPO. (*Id.* ¶ 35.) The IPO documents made no mention at all of Centaurus's ownership interest in Oncoclínicas or of Centaurus's alleged Liquidation Right. The IPO documents instead listed Goldman Sachs Inc. as the sole ultimate shareholder of the investment funds that controlled Oncoclínicas at the time of the IPO: Josephina I FIP and Josephina II FIP. (*Id.* & Ex. G.)

Accordingly, the only conclusion that can be drawn is that either Josephina III FIP's recent statements to the CVM were materially false or misleading, or the contradicting statements in the Prospectus and other documents related to Oncoclínicas's IPO were materially false or misleading. (*Id.* ¶ 36.) At the very least, the recent statements indicate that the IPO documents had material omissions. (*Id.*) These misstatements and material omissions are not mere technical irregularities. They cut to the core of the full disclosure regime that underpins Brazilian corporate and securities law, more precisely Instruction CVM 480/2009, in effect at the time of the IPO, Annex 24, items 4.1, "b"; 15.1, "h"; 15.4, "a" (*Id.* & Ex. L.)

Indeed, investors in Brazil and abroad relied upon and priced Goldman Sachs Inc.'s ownership and the tender-offer requirement into the price of the shares: sophisticated investors understand that Goldman Sachs Inc., as an institutional investor, was likely to further transfer its ownership of Oncoclínicas shares to a third party and thus trigger the Tender Offer provision and result in a substantial premium. If in fact Goldman Sachs Inc. was not the 100% controlling shareholder at the IPO, by concealing the true identity and interests of the controlling block of shareholders, as well as Centaurus's Liquidation Right, the IPO documents misled investors into relying upon a potential subsequent sale of Oncoclínicas in making their investment decisions, and also deprived investors of the transparency that is essential to fair and efficient capital markets under Brazilian law. (*Id.*) Under Brazilian corporate and securities law, one of the core rights of public investors is to know the identity of the controlling or reference shareholders of public companies. (*Id.*)

In addition, Centaurus may be trying to avoid Oncoclínicas's bylaw-mandated tender-offer requirement by invoking the existence of the secret Liquidation Right, thus further harming investors. (*Id.* ¶ 37.)

Finally, ANBIMA, the Brazilian self-regulatory organization that reviewed and cleared the Prospectus and ancillary materials for the IPO, failed and is failing to identify and remedy these misrepresentations, raising questions about whether ANBIMA discharged its duties to safeguard market integrity and protect investors. (*Id.* ¶ 38.)

### E.    The Contemplated Brazilian Proceeding

ABRAICC intends to initiate the Contemplated Brazilian Proceeding against Oncoclínicas and ANBIMA under Law 7,913/1989 and Law 7,347/1985. (*Id.* ¶ 39.) Article 1, III, of Law

7,913/1989 states that certain entities "shall take the necessary judicial measures to prevent losses or to obtain compensation for damages caused to holders of securities and market investors, especially when arising from: … III – the omission of material information by those obliged to disclose it, as well as its disclosure in an incomplete, false, or misleading manner."  (*Id.* ¶ 41.) Law 7,347/1985, the procedural statute that governs class actions in Brazil, affords standing to non-profit associations to bring such actions if they meet two requirements set forth in Article 5, item V, subitems "a" and "b": (a) they are incorporated for more than one year; and (b) they include, among their institutional purposes, the protection of collective interests, encompassing the economic order.  ABRAICC satisfies both requirements.  (*Id.* ¶ 42.)

ABRAICC therefore intends to file the Contemplated Brazilian Proceeding to seek losses and damages arising from (i) Oncoclínicas's dissemination of materially false or misleading information regarding shareholder control of Oncoclínicas, in violation of Instruction CVM 480/2009, Annex 24, items 4.1, "b"; 15.1, "h"; 15.4, "a," and (ii) ANBIMA's regulatory failures in clearing the Prospectus and ancillary materials of the IPO, in violation of Instruction CVM 480/2009, Annex 24, items 4.1, "b"; 15.1, "h"; 15.4, "a," combined with violations of Articles 6, 12, 13 and 26, I, of the ANBIMA Code of Public Offerings, Version 2021.  (*Id.* ¶ 39.)  ABRAICC also intends to seek in the Contemplated Brazilian Proceeding a judicial order against Oncoclínicas to (a) suspend transactions in its shares and (b) Josephina III FIP's and Centaurus's shareholder rights—until the tender offer mandated by Article 39 of Oncoclínicas's bylaws is carried out.  (*Id.*)

In addition, ABRAICC has the power to bring claims in the Contemplated Brazilian Proceeding on behalf of all Oncoclínicas shareholders, including foreign direct and indirect shareholders.  (*Id.* ¶ 43.)  Pursuant to Resolution 4,373/2014 of Brazil's National Monetary

Council ("CMN")—the rule in effect at the time the IPO was launched—investors who are not Brazilian residents may only invest in shares trading on Brazilian exchanges via a specialized account, known as a "4,373 Account." (*Id.* & Ex, M.)  As of 2025, the Central Bank of Brazil issued Joint Resolution 13/2024—a new regulation governing foreign investments—which requires nonresident investors to transition from 4,373 Accounts to a new classification of nonresident accounts, known as "CNR Accounts." (*Id.* & Ex. N.)  ABRAICC's claims in the Contemplated Brazilian Proceeding will encompass such investors, since they are also direct or indirect Oncoclínicas shareholders. (*Id.*)

As per Instruction CVM 480/2009, in effect at the time of the IPO, Annex 24, items 4.1, "b"; 15.1, "h"; 15.4, "a," all publicly traded companies in Brazil are obliged to (i) "describe the risk factors that may influence the investment decision, in particular those related: … to its direct and indirect controlling shareholder or controlling group" (item 4.1, "b"); and (ii) disclose "a list containing the information … about its direct and indirect controllers, up to and including controllers who are natural persons, even if such information is treated as confidential pursuant to a legal affair or the legislation of the country in which the shareholder or controller is incorporated or domiciled (item 15.1, "h").  Furthermore, all publicly traded companies in Brazil are obliged to present an "organization chart of the issuer's shareholders and the financial group to each it belongs, indicating:  all direct and indirect controlling shareholders and, should the issuer wish, shareholders with a shareholding equal to or greater than 5% of a class or type of shares," (item 15.4, "a").  (*Id.* & Exhibit L)

Oncoclínicas failed to comply with such regulations when it did not reveal that Centaurus was part of the group of controlling shareholders of Oncoclínicas at the time of its IPO.  (*Id.* ¶ 45.)

At the very least, Oncoclínicas made an omission of material fact, and the information that was disclosed by Oncoclínicas was in an incomplete, false, or misleading manner, since the IPO documents contained no reference to the existence of Centaurus's Liquidation Right. (*Id.*) Finally, ANBIMA failed and is failing to exercise its autoregulatory powers to protect Brazilian financial and capital markets. (*Id.*)

ABRAICC, through its Brazilian counsel (Dr. Lazzareschi), has already served two notices on Oncoclínicas regarding the Contemplated Brazilian Proceeding, on March 19 and 25, 2025. (*Id.* ¶ 46 & Exs. O, P.) The Contemplated Proceeding is imminently contemplated: ABRAICC has standing under Brazil's Public Civil Action Act (Law 7,347/1985); ABRAICC has retained counsel (Dr. Lazzareschi); ABRAICC has served the above-mentioned notices; and ABRAICC's counsel has started putting together a draft of the complaint. (*Id.*) The Contemplated Brazilian Proceeding against Oncoclínicas and ANBIMA is not speculative; it aligns with real controversies over Oncoclínicas's shareholding.

### F. The Respondents Possess Highly Material Information for Use in the Contemplated Brazilian Proceeding

The documents and information that ABRAICC requests in this Section 1782 Application will assist ABRAICC's claims in the Contemplated Brazilian Proceeding by, among other things, providing further evidence about the misrepresentations and material omissions made in connection with Oncoclínicas's IPO—including those about the ownership structure of Oncoclínicas—and the harm that investors have suffered as a result of those misrepresentations and omissions. (*Id.* ¶ 49.) Respondents are almost certain to have possession, custody, or control of the documents and information sought in this Application because Goldman Sachs Inc. was listed in the Prospectus as the ultimate shareholder of the investment funds that controlled

Oncoclínicas at the time of the IPO, and Goldman Sachs LLC was listed as a placement agent to offer shares of Oncoclínicas outside Brazil, including in the United States. (*Id.* ¶ 56.)

Specifically, ABRAICC seeks the following, targeted categories of information from the Respondents:

(i)    Documents and communications concerning the Oncoclínicas IPO;

(ii)    Documents and communications related to Goldman Sachs Inc.'s and Goldman Sachs LLC's efforts to promote the Oncoclínicas IPO to investors located in the United States and elsewhere, including but not limited to documents and communications regarding representations made to such investors and the full list of all investors and/or potential investors to which any representations were made;

(iii)    Documents and communications concerning the ownership of Oncoclínicas, including the identity and nature of ownership interests held by Centaurus and any other entity or individual, whether direct or indirect; and

(iv)    Documents and communications relating to how Goldman Sachs Inc. and Goldman Sachs LLC facilitated U.S.-based and/or non-Brazilian investors in acquiring shares in the Oncoclínicas IPO, including (a) any individual or pooled 4,373 Accounts, (b) the entity or entities holding such 4,373 Accounts, (c) formation documents of any such entities, (d) any current shareholder or membership structure of such entities; (e) any individual or pooled CNR Accounts held by non-Brazilian investors, (f) the entity or entities holding such CNR Accounts, (g) formation documents of such

entities, and (h) any current shareholder or membership structure of such entities.  (*Id.* ¶ 47; Scanlon Decl. Exs. 1-4.)

The information sought from the Respondents is likely to include contracts, bylaws, shareholders agreements, meeting minutes, notices, communications, due diligence reports, draft prospectuses, and internal memoranda concerning (i) Centaurus, BHCP, New Broad Street Brazil Holdings II, LLC, and Centaurus's alleged Liquidation Right, from the IPO up to the exercise of the Liquidation Right; (ii) ownership interests (direct and indirect) of Oncoclínicas from the IPO to present, (iii) Centaurus's ownership interest in Oncoclínicas since the IPO to present; (iv) any attempt to obscure Centaurus's ownership interest in Oncoclínicas and/or avoid the tender offer requirement in Oncoclínicas's bylaws, and (v) what the Respondents were telling potential investors in the United States and elsewhere about the above.  (Lazzareschi Decl. ¶ 48.)

Such documents and information will be used in the Contemplated Brazilian Proceeding against Oncoclínicas and ANBIMA to show that Oncoclínicas misrepresented Centaurus's ownership interests in Oncoclínicas at the time of the IPO and after, especially with regard to the Liquidation Right; that Oncoclínicas structured the IPO disclosure in a manner that omitted Centaurus's ownership interest and Liquidation Right; that Oncoclínicas and/or Centaurus are attempting to avoid the tender-offer requirement in Oncoclínicas's bylaws by misstating the nature and history of Centaurus's ownership interest in Oncoclínicas; that Oncoclínicas disclosed Oncoclínicas's true ownership interests to potential investors in the United States and abroad, and thus intentionally obscured it in Brazil; that Oncoclínicas structured the IPO disclosures differently for potential investors in the United States and abroad than it did for those in Brazil, thus showing that disclosures in Brazil contained misstatements or omissions of material fact; and/or that

ANBIMA failed in its autoregulatory duties when, through its market participant institutions, it reviewed and cleared the Prospectus and ancillary materials for Oncoclínicas's IPO without identifying any of the misstatements and/or omissions of material fact discussed above. (*Id.* ¶ 49.)

In addition, the documents and information regarding 4,373 Accounts and CNR Accounts will be used for ABRAICC's claims on behalf of non-Brazilian investors. (*Id.* ¶ 50.) As discussed above, Resolution 4,373/2014 of Brazil's National Monetary Council—the rule in effect at the time the IPO was launched—required non-Brazilian residents to use 4,373 Accounts for any investments in shares trading on Brazilian exchanges. (*Id.* ¶¶ 50-52.) As of 2025, a new regulation governing foreign investments—Joint Resolution 13/2024—requires nonresident investors to transition from 4,373 Accounts to a new classification of nonresident accounts, known as "CNR accounts." (*Id.* ¶ 53.) Accordingly, foreign investors who participated in Oncoclínicas's IPO through 4,373 Accounts may now be in the process of migrating to CNR Accounts during the one-year transition period established by the new resolution. (*Id.*)

When financial institutions such as Goldman Sachs Inc. or Goldman Sachs LLC serve as bookrunners or international placement agents for Brazilian IPOs, they typically set up a pooled 4,373 Account (or, currently, a CNR Account) via some sort of offshore special purpose vehicle, often incorporated in an offshore common law jurisdiction such as the Cayman Islands or the British Virgin Islands. (*Id.* ¶ 54.) Non-Brazilian investors therefore do not acquire actual shares of the IPO target; rather, they acquire interests in the pooled 4,373 or CNR Account corresponding to the amount of shares acquired on their behalf. (*Id.*)

The requested discovery regarding 4,373 Accounts and CNR Accounts will therefore be used by ABRAICC for its claims in the Contemplated Brazilian Proceeding on behalf of foreign

investors, including investors in the United States—to show who they are, the interest they have, and how they may have been harmed.  (*Id.* ¶ 55.)

### G.    ABRAICC's Requests for Preservation and Voluntary Production of the Requested Materials.

By letter dated October 2, 2025, ABRAICC requested that the Respondents preserve all documents and communications concerning (i) the Oncoclínicas IPO, (ii) Goldman Sachs Inc.'s and Goldman Sachs LLC's efforts to promote the Oncoclínicas IPO to investors located in the United States and elsewhere, and (iii) the ownership of Oncoclínicas.  (Scanlon Decl. ¶ 8 & Ex. 6)  ABRAICC also requested that the Respondents voluntarily produce such documents pursuant to 28 U.S.C. § 1782(b).  (*Id.*)  On a call with counsel for the Respondents on October 22, 2025, counsel for ABRAICC reiterated these requests and expanded the topics of inquiry to include (iv) the tender-offer requirement in Oncoclínicas's bylaws (Art. 39), and (v) how the Respondents facilitated U.S.-based and/or non-Brazilian investors in acquiring shares in the Oncoclínicas IPO.

By letter dated October 28, 2025, counsel for ABRAICC renewed these requests and sent counsel for the Respondents a near-final draft of this Section 1782 Application.  (Scanlon Decl. ¶ 9 & Ex. 7)  As of the date of this filing, counsel for the Respondents has not produced the information requested.

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or a "reasonabl[y] contemplat[ed]" foreign proceeding.  *See Intel*, 542 U.S. at 259.  The statute, in relevant part, states:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782(a).

Applications under Section 1782 are routinely decided by this Court on an *ex parte* basis. *See e.g.*, *In re Tethyan Copper Co. Pty. Ltd.*, 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) ("Courts routinely grant similar petitions *ex parte*."); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (collecting cases).[2] Such applications are based on "modest prima facie elements" in order to effectuate "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability.'" (citing *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993))).

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before

---

[2]  In an October 30, 2025 letter, the Respondents indicated that they would not comply with any forthcoming subpoenas.  (Scanlon Decl. Ex. 8 at 2)  Although they conceded that Petitioner's discovery requests were proper, they raised concerns about the scope of the requests.  (*Id.*)  These concerns can be easily abated with reasonable search terms and custodians.  And, the Respondents will be able to move to quash the Subpoenas after they have been served, if they so wish, and thus suffer no injury from this *ex parte* application.  *See Symeou v. Hornbeam Corp.*, 722 F. App'x 7, 10–11 (2d Cir. 2018) (noting there is no impropriety in bringing Section 1782 applications *ex parte* since respondents may move to quash).

a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80.

After finding that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264–65 (2004).

Moreover, courts in this circuit "evaluate discovery requests under [S]ection 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995) (citation omitted); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (reversing denial of Section 1782 discovery where district court failed to consider statute's twin aims and instead improperly focused on whether discovery would be available under German law).

Both the Supreme Court and the Second Circuit have acknowledged a congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247–48; *Brandi-Dohrn*, 673 F.3d at 80 ("In pursuit of these twin goals, the statute

has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179–80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly[.]").

**B.      ABRAICC Satisfies the Statutory Requirements of 28 U.S.C. § 1782.**

ABRAICC's Application satisfies the three statutory requirements of Section 1782: (1) Respondents are "found" in the Southern District of New York; (2) the requested information is for use in a Contemplated Brazilian Proceeding; and (3) ABRAICC is an "interested persons" as the plaintiff in the Contemplated Brazilian Proceeding.

**1.      Respondents Are "Found" In This District.**

Respondents have their principal places of business in New York City and thus "found" in this District for purposes of Section 1782.  *See In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) (holding that Section 1782's "resides or is found" language extends to the "limits of personal jurisdiction consistent with due process"); *In re Refinería de Cartagena S.A.S.*, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024) (finding that a corporation is "found" in the district where its principal place of business is located).

**2.      The Discovery Sought Is "For Use" In A Foreign Proceeding**

The information sought in the Subpoenas is "for use" in the Contemplated Brazilian Proceeding.

First, contemplated foreign proceedings are an appropriate basis for seeking Section 1782 discovery.  *See Intel*, 542 U.S. at 259 (holding that Section 1782 requires only that a foreign proceeding "be within reasonable contemplation").  The Second Circuit requires only that a Section 1782 applicant provide "some objective indicium" or "concrete basis" that there is

reasonable contemplation of the foreign proceeding. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015). "Courts in this District have found the 'reasonable contemplation' standard satisfied in circumstances where the petitioner retained foreign counsel, had 'begun preparing the necessary pleadings for the petition,' had 'set forth a theory' of the underlying claims, and provided declarations expressing an intent to initiate [the foreign proceedings]." *In re Orthogen Int'l GmbH*, 2025 WL 1268843, at *4 (S.D.N.Y. Apr. 30, 2025) (citing cases). Here, ABRAICC has retained foreign counsel, sent notices to Oncoclínicas regarding the Contemplated Brazilian Proceeding, set forth a theory of the foreign claims, and submitted a declaration from its lawyer in Brazil stating that it intends to initiate the Contemplated Brazilian Proceeding. *See supra* at 13.

Second, civil proceedings before foreign courts satisfy Section 1782's requirements. *See, e.g.*, *Intel*, 542 U.S. at 259 ("foreign proceeding" includes civil case before foreign court); *In re App. for an Ord. Seeking Discovery Under 28 U.S.C. § 1782*, 2024 WL 2883293, at *4–5 (S.D.N.Y. May 16, 2024) (a "tribunal" within the meaning of Section 1782 includes foreign courts); *In re Lane*, 2022 WL 16737132, at *2 (S.D.N.Y. Nov. 7, 2022) (authorizing Section 1782 discovery to determine the location of partnership assets, for use in Brazilian civil proceedings). Here, the Contemplated Brazilian Proceeding will be brought by ABRAICC against Oncoclínicas and ANBIMA as a class action before the courts of Brazil. (*See supra* at 10-11.)

Third, the "for use" requirement imposes a de minimis burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *See In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 175 (finding that the "Applicant has made the required *de minimis* showing that it is seeking discovery 'for use' in proceedings in a Brazilian

court") (citing *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) ("the burden imposed upon an applicant is de minimis")). Here, ABRAICC plainly satisfies this requirement. As explained above, (*see supra* at 14-15), and in the Lazzareschi Declaration (at ¶¶ 47-58), the information sought in the Subpoenas is highly material and relevant to the Contemplated Brazilian Proceeding. ABRAICC will use the evidence sought here to further support its allegations and claims in the Contemplated Brazilian Proceeding, including to show that Oncoclínicas made misrepresentations or material omissions in their IPO documents about the true ownership structure of Oncoclínicas, that ANBIMA failed to perform its duties to safeguard market integrity and investor protection when it failed to identify these misrepresentations and omissions, and that investors in Brazil and abroad were harmed as a result. (*See supra* at 3.)

### 3. ABRAICC Is an Interested Person in the Contemplated Brazilian Proceeding.

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see KPMG*, 798 F.3d at 120, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Ecoprivate Bus. Ltd. v. Clearing House Payments Co. L.L.C.*, 2023 WL 4848516, at *3 (S.D.N.Y. July 28, 2023) (confirming that litigants are interested parties for purposes of Section 1782). Here, ABRAICC is the plaintiff in the Contemplated Brazilian Proceeding and is therefore an "interested person" under Section 1782.

**C.  The Discretionary Factors of Section 1782 all Weigh Heavily in Favor of Permitting the Discovery ABRAICC Seeks.**

Each of the *Intel* factors weighs in favor of granting the requested discovery.  First, the Respondents will not be parties to the Contemplated Brazilian Proceeding.  Second, there is no reason to believe that the Brazilian courts would be unreceptive to evidence obtained through Section 1782 discovery.  Third, ABRAICC is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence.  Fourth, ABRAICC's narrowly-tailored document requests and request for limited testimonial evidence from the Respondents are carefully circumscribed and targeted to key facts so as to avoid undue burden on the Respondents

**1.  The First *Intel* Factor Favors Granting Discovery Because the Respondents Will Not Be Parties to the Contemplated Brazilian Proceeding.**

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  *See Intel*, 542 U.S. at 244, 264.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for [Section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Id.*  Here, the Respondents will not be parties to the Contemplated Brazilian Proceeding, which will be brought against only Oncoclínicas and ANBIMA.  (*See supra* at 4; Lazzareschi Decl. ¶ 63.)  In addition, the Application seeks evidence that is outside the jurisdictional reach of Brazilian courts and likely to be in the sole possession of the Respondents, which are both U.S. entities (Lazzareschi Decl. ¶¶ 64-66.)  The first *Intel* factor therefore weighs heavily in favor of discovery.

## 2. The Second *Intel* Factor Favors Granting Discovery Because the Brazilian Courts Will Be Receptive to the Requested Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. *See, e.g.*, *Euromepa*, 51 F.3d at 1100 (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of [S]ection 1782"). There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Id.* at 1102; *Application of Gianoli Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993) (granting Section 1782 application absent specific finding that evidence collection would be contrary to the law in the foreign forum). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100 (emphasis added); *see In re Safra*, 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 2, 2022) ("objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government.")

The Brazilian courts will be receptive to evidence obtained through this Application. As explained in the Declaration of Dr. Lazzareschi, the Brazilian legal system allows and welcomes foreign evidence for use in Brazilian litigation, and no Brazilian court has restrained ABRAICC from seeking or obtaining the evidence it seeks in its Section 1782 Application. (Lazzareschi Decl. ¶ 61.) Litigants in Brazil often use Section 1782 to seek discovery for use in Brazilian proceedings, and Brazilian courts have been receptive to discovery obtained through this mechanism. (*Id.*) Indeed, courts in the United States have often granted Section 1782 discovery to litigants in

Brazilian courts. *See, e.g.*, *In re Atvos*, 481 F. Supp. 3d at 175 (allowing Section 1782 discovery for use in proceedings in a Brazilian court).

Accordingly, the second *Intel* factor weighs heavily in favor of discovery.

> **3.** **The Third *Intel* Factor Favors Granting Discovery Because the Application Is Made in Good Faith and Does Not Circumvent Any Proof-Gathering Restrictions.**

The third *Intel* factor looks to "whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn*, 673 F.3d at 82 ("While *Intel* concerned the *discoverability* of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *see also Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first. *See In re Metallgesellschaft AG*, 121 F.3d at 79 ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that the Subpoenas conceal an attempt to circumvent Brazilian proof-gathering restrictions. As explained in the Declaration of Alfredo Lazzareschi, the use of evidence obtained under Section 1782 does not violate Brazilian public policy or the local

evidentiary regime. (Lazzareschi Decl. ¶ 59.) To the contrary, Brazilian procedural law expressly admits the use of foreign evidence, provided it is authenticated and translated. (*Id.*) Article 369 of the Brazilian Civil Procedure Code ("BCCP") states that "the parties have the right to employ all legal means, as well as those that are morally legitimate, even if not specified in this Code, to prove the truth of the facts on which the claim or the defense is based and to effectively convince the judge." (*Id.* & Ex. Q.) Among the mechanisms set out in the BCCP to gather evidence, "[t]estimonial evidence" from a live witness "is always admissible, unless the law provides to the contrary" and, with respect to documents, "[a] judge may order a party to disclose a document or thing that is in the latter's possession." (*Id.*)

The third *Intel* factor thus weighs heavily in favor of granting ABRAICC's Application.

### 4. The Fourth *Intel* Factor Favors Granting Discovery Because the Requests Are Narrowly-Tailored and Proportional to the Needs of the Contemplated Brazilian Proceeding.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Courts have concluded that undue burden should be analyzed based "on the relevance of the information sought—and in the case of a [Section] 1782 petition, relevance is assessed with regard to the foreign proceeding." *See Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio*, 680 F. App'x 37, 39 (2d Cir. 2017).

Here, the five document requests to each Respondent (and corresponding deposition topics) are narrowly tailored and directly relevant and proportional to the issues in the Contemplated

Brazilian Proceeding.  (*See supra* at 23; Lazzareschi Decl. ¶¶ 39-58; *id.* at Appendix A (outlining how each document request is relevant to the issues in the Contemplated Brazilian Proceeding).) As noted above, ABRAICC and the Respondents have already engaged in communications about these requests, including ABRAICC's request to preserve documents and communications relevant to these matters.  (Scanlon Decl. ¶ 8 & Ex. 6.)  Responsive documents should thus be easily identifiable, readily accessible, and not burdensome for the Respondents to produce.

Moreover, if the Respondents reasonably believe that any documents present any confidentiality concerns, ABRAICC is willing to consider accommodating such concerns, such as by stipulating to an appropriate protective order.  *See, e.g.*, *Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.")

The fourth *Intel* factor thus weighs heavily in favor of granting Petitioner's Application.

**III.    CONCLUSION**

For the foregoing reasons, ABRAICC respectfully requests that the Court (a) grant the Application and Petition for an Order to Conduct Discovery; (b) enter the Proposed Order associated with Petitioner's application; (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas on the Respondents; and (d) grant any and all other relief to the Petitioner as deemed just and proper.

Dated: November 3, 2025               <u> */s/ Michael B. Carlinsky*      </u>

Michael B. Carlinsky
Mario O. Gazzola
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue, 9th Fl.
New York, NY 10016
Tel. (212) 849-7000
michaelcarlinsky@quinnemanuel.com
mariogazzola@quinnemanuel.com

John (Fritz) Scanlon
Katherine Schroeder
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel. (202) 538-8000
fritzscanlon@quinnemanuel.com
katherineschroeder@quinnemanuel.com

*Counsel for Petitioner Associação Brasileira de Investimento, Crédito e Consumo*